IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Appellant,<br><br>v.<br><br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellees. | Civ. No: 25-2570<br><br>(DC case: 5:24-cv-05338) |

# APPELLANT'S RESPONSE AND OBJECTION TO CLERK'S ACTION AND DIRECTIVE (ECF 7)

Appellant Michael Miller objects to and moves to strike ECF 7 — an unsolicited, fact-specific "jurisdictional defect" letter issued by the Clerk's Office without judicial authorization. ECF 7 exceeds the clerk's administrative authority under FRAP 45(b) and 3d Cir. L.A.R. 3.3(a), injects adversarial legal argument into a pending appeal, and omits dispositive record facts that perfect finality under *Weber* and *Borelli*. In substance, it operates as an ex parte motion from a non-party, timed to frame the merits panel's view before any adversarial briefing. The Court's acceptance of such staff-driven pre-judgment, here and in appellant's prior appeals, undermines the separation of judicial and administrative functions, threatens the integrity of appellate review under 28 U.S.C. § 1291, and raises serious due process concerns. Appellant states:

# I. PROCEDURAL OBJECTION TO ECF 7

## A. Ultra Vires Action by Nonjudicial Staff

Under FRAP 45(b), the clerk's duties are strictly administrative: to "perform the duties assigned by the court" and "not to exercise judicial functions." Likewise, 3d Cir. L.A.R. 3.3(a) authorizes only ministerial notification of a possible jurisdictional defect and referral of the matter to the Court — not unsolicited legal memoranda applying precedent to the facts of a pending appeal.

ECF 7 exceeds those limits. It contains case-specific legal argument — invoking *Borelli* and *Redmond* against appellant's jurisdictional posture — without any citation to 3.3(a) or other procedural authority. No Article III judge signed it, and it was not entered as an order. In substance, it functions as an adversarial motion from a non-party, something the Clerk's Office has no standing to file, and it was issued before any adversarial briefing began.

ECF 7 excerpt: "Jurisdictional defects cannot be remedied by the court of appeals. The parties may submit written argument in support of or in opposition to dismissal of the appeal for lack of appellate jurisdiction… Upon expiration of the response period, the case will be submitted to the Court for consideration of the jurisdictional question. The parties will be advised of any Order issued in this matter."

This excerpt underscores the problem: the clerk has unilaterally declared the existence of a "jurisdictional defect," set briefing deadlines, and framed the issue for the Court — all without judicial authorization. Under FRAP 45(b), such functions require the Court's action and cannot be assumed by administrative staff.

In *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 106–08 (2009), the Supreme Court cautioned that exceptions to the final-judgment rule "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." Congress — not the courts, and certainly not nonjudicial administrative staff — defines the scope of appellate jurisdiction. The use of clerk-issued "jurisdictional defect" letters to frame and pre-judge the finality question functions as an unauthorized exception to § 1291, allowing staff to block or delay appeals before judicial review, eroding the finality principle, and disserving its objectives.

**B. Lack of Standing and Due Process Violation**

The Clerk's Office is not a party, has no standing, and cannot inject adversarial legal argument into a pending appeal without leave of court. Jurisdictional rulings must be made by judges on the basis of adversarial submissions from the parties, not pre-judged by court staff. Issuing a legal analysis adverse to one party before briefing begins undermines the neutral administration of the docket.

## C. Deficiency Under Rule 7(b)(1) and FRAP 27

Even if the Court were to construe ECF 7 as a valid procedural motion, it fails Rule 7(b)(1) — incorporated via FRAP 27(a)(2)(A) — which requires a motion to "state with particularity the grounds for seeking the order" and "the relief sought." ECF 7 does neither:

1. It cites *Borelli* and *Redmond* without identifying which claims or procedural events allegedly keep the district court's disposition from being final;

2. It omits dispositive record events — appellant's waiver of all amendment rights (ECFs 70, 71, 73) and Rule 58 motions (ECFs 68, 72, 72-1) — that perfect finality under *Weber*; and

3. It fails to connect its cited law to the record with any coherent factual analysis.

## D. Effect as Ex Parte Communication and Appearance of Partiality

ECF 7 was issued one day after appellant's first substantive filing (ECF 5) and before any adversarial briefing had begun. It presents a one-sided framing of the jurisdictional issue adverse to appellant, without notice or opportunity for contemporaneous rebuttal. This creates the appearance of an ex parte communication from nonjudicial staff to the merits panel, prejudicing a pro se litigant and raising a serious question under 28 U.S.C. § 455(a) as to the appearance of impartiality.

## II. *WEBER* AND *BORELLI* CONTROL AND COMPEL JURISDICTION

### A. Prior Panel Instruction in No. 25-1423

In the related appeal, No. 25-1423, this Court dismissed for lack of a final order but identified the specific procedural cure: an unequivocal waiver of the right to amend coupled with a final judgment request. The panel drew directly from *Weber v. McGrogan*, 939 F.3d 232 (3d Cir. 2019), and *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976).

The Court's July 2025 order in 25-1423 is law of the case as to the procedural cure required for jurisdiction in this litigation. Appellant followed those instructions precisely:

1. Filed ECFs 70, 71, and 73 in the district court, expressly waiving all rights to amend;
2. Filed Rule 58 motions (ECFs 68, 72, 72-1) requesting entry of final judgment.

The district court denied all relief and refused to issue a final order — precisely the circumstance *Weber* addresses. The clerk's omission of this controlling procedural history misstates the governing standard and ignores the Court's own prior instruction.

**B. The *Weber* Cure Rule Applied to This Record**

*Weber* reaffirmed *Borelli*'s core holding: when a plaintiff cannot amend or clearly and unequivocally declares an intent to stand on the complaint, the dismissal becomes final and appealable. This finality rule exists to prevent the absurd result of a case being immune from appellate review merely because a district court refuses to enter a final judgment.

The *Weber* panel cautioned:

"The only practice that avoids these perils comes from the guidance offered in *Borelli* more than four decades ago… If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate." 939 F.3d at 241.

Appellant's waiver filings satisfy this rule exactly. The record leaves no ambiguity: appellant expressly asserted his intent to stand on the complaint and eliminate any opportunity to cure. What violated both Rule 58 and *Weber* was Judge Leeson's refusal to perform the ministerial act of entering final judgment in response.

**C. Separation-of-Powers Consequences if ECF 7's View Prevails**

The logical consequence of the Clerk's position is untenable: a district judge could dismiss all claims without prejudice, the plaintiff could stand on the complaint, and yet the judge could indefinitely refuse to enter a final order — thereby unilaterally depriving this Court of jurisdiction and insulating the dismissal from appellate review. Such a result is incompatible with *Weber*, *Borelli*, and Rule 58, as well as the separation-of-powers principle that appellate jurisdiction under 28 U.S.C. § 1291 cannot be nullified by the inaction of a trial judge.

## III. RULE 58 CONFIRMS FINALITY HERE

### A. Ministerial Duty to Enter Judgment

Federal Rule of Civil Procedure 58(b)(1)(C) provides that, *"without the court's direction, the clerk must… promptly prepare, sign, and enter the judgment when… the court denies all relief."* Once appellant stood on his complaint (ECFs 70, 71, 73), the district court had "denied all relief" within the meaning of Rule 58.

Rule 58(d) further authorizes a party to request that judgment be set out in a separate document. Appellant did exactly that, filing Rule 58 motions at ECFs 68, 72, and 72-1. At that point, entry of judgment was a ministerial duty of the district court clerk, not a matter of discretion. As discussed in Section I.A, the appellate clerk's unsolicited, case-specific legal argument in ECF 7 constitutes a purely ultra vires act that interfered with that ministerial process.

## B. District Judge's Refusal Cannot Defeat Jurisdiction

The district judge's refusal to perform this ministerial act cannot be used to nullify appellate jurisdiction under 28 U.S.C. § 1291. *Weber* exists precisely to prevent such obstruction — ensuring that the district court's inaction does not function as a de facto veto over a litigant's right to appellate review.

## IV. *REDMOND* IS MISPLACED AND IRRELEVANT

### A. Narrow Holding in *Redmond*

*Redmond v. Gill*, 352 F.3d 801 (3d Cir. 2003), addressed the finality of an order denying in forma pauperis (IFP) status without prejudice where the plaintiff had an opportunity to cure the filing defect. The Court held that such an order is not final or appealable unless it has the practical effect of terminating the action and precluding the plaintiff from proceeding IFP. That narrow holding does not apply here. This case is not about IFP status, and there is no remaining "opportunity to cure" in the district court — appellant asserted his intent to stand on the complaint.

### B. *Redmond* Actually Supports Jurisdiction Here

Even under *Redmond*'s own reasoning, finality exists when the plaintiff is precluded from proceeding further. That is precisely the effect of appellant's waiver and the district court's refusal to grant any relief.

## V. ECF 7 AS PART OF A CONTINUING PATTERN OF ADMINISTRATIVE OBSTRUCTION

### A. Procedural History Showing Pattern

ECF 7 is not an isolated irregularity; it fits a recurring pattern in which court officers, acting in concert with or to the benefit of government defendants, have used procedural maneuvers to prevent any merits review of appellant's claims:

1. **Prior Appeal (No. 25-1423)** — Dismissed for lack of finality, with the panel identifying the precise cure under *Weber* and *Borelli*.

2. **Post-Dismissal Proceedings** — Appellant promptly filed ECF 70, 71, and 73, waiving all amendment rights and eliminating any "opportunity to cure," and moved for final judgment under Rule 58 (ECFs 68, 72, 72-1).

3. **Current Appeal (No. 25-2570)** — Two days after the notice of appeal, and one day after appellant's first substantive filing (Concise Summary of the Case), the Clerk issued ECF 7 — a fact-specific legal argument invoking *Borelli* and *Redmond* while omitting the curative steps the Court itself prescribed in 25-1423. As quoted in Section I.A, ECF 7 explicitly declares a

"jurisdictional defect," sets briefing deadlines, and frames the legal question for the panel — all without judicial authorization.

**B. Pattern and Prior Objection**

The ultra vires conduct reflected in ECF 7 mirrors a nearly identical incident in appellant's prior appeal, No. 24-2934, where the Clerk's Office initiated a dispositive procedural action — directing that the appeal be listed for summary action under L.A.R. 27.4 and staying briefing — without any judicial order. Appellant objected (Docs. 13 & 14), citing FRAP 27, L.A.R. 27.4–27.6, and the fundamental due process right to have contested legal issues decided by judges, not administrative staff.

The panel in 24-2934 did not address the objection on the merits, instead burying it in a conclusory footnote. The effect was to leave the procedural misconduct uncorrected and to signal that such actions by the Clerk's Office will be tolerated.

Here, the problem is compounded: the record supports the inference that Article III judges are knowingly allowing, and even using, this clerk-driven "jurisdictional defect" process as a vehicle to evade adjudication of appeals they are constitutionally bound to decide. This constitutes not merely administrative irregularity, but a violation of the judicial duty under Article III to decide "Cases" and "Controversies" properly before the court, as articulated in *Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The statutory and constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting beyond their authority.").

**C. Cumulative Effect**

This conduct and pattern has the cumulative effect of:

- Foreclosing appellate review at the threshold through administrative action rather than judicial determination;

- Substituting the legal judgment of nonjudicial staff for that of the Court, contrary to FRAP 45(b);

- Creating the reasonable appearance of alignment with appellees' interests, because every procedural step shields them from review; and

- Allowing circuit judges to avoid taking responsibility for Article III decisions by outsourcing adverse "jurisdictional" findings to the Clerk's Office in violation of the separation of powers. See *Nguyen v. United States*, 539 U.S. 69, 81 (2003) (emphasizing the structural importance of a tribunal composed in accordance with Article III requirements).

**D. Resulting Prejudice**

The record demonstrates that officers of the Third Circuit are relentlessly attacking pro se appellant's statutory right to appellate review under 28 U.S.C. §

1291 through coordinated procedural obstruction. ECF 7, even if viewed in isolation, is ultra vires and defective; in context, it is another calculated step in an ongoing denial of access to an impartial tribunal. By repeatedly substituting the legal judgment of nonjudicial staff for that of Article III judges who shield their actions within procedural opacity, these actions breach the separation of judicial and administrative functions, undermine public confidence in the impartial administration of justice, and raise serious due process concerns.

**E. Demand for Immediate Judicial Determination**

Between Appeal No. 24-2934 and this case, the Court has had the dispositive 12(b)(1)/12(b)(6) jurisdiction–merits sequencing issue fully briefed and preserved for nearly a year. The legal question is clear, requires no factual development, and compels reversal under binding precedent, yet no merits ruling has been issued. In *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), the Supreme Court reaffirmed that a federal court "must assure itself of jurisdiction before proceeding to the merits" and may not bypass or conflate the two inquiries.

The Third Circuit's persistent refusal to decide this controlling legal question — while instead employing clerk-driven "jurisdictional defect" mechanisms to avoid review — constitutes misconduct and undermines the Court's Article III obligation to resolve "Cases" and "Controversies" properly before it.

Such evasion also violates the structural principle that an Article III tribunal must be composed and must act in accordance with constitutional requirements. *Nguyen v. United States*, 539 U.S. 69, 81 (2003).

Moreover, in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 106–08 (2009), the Court warned that exceptions to the final-judgment rule "must never be allowed to swallow the general rule" and that Congress — not courts, and certainly not nonjudicial staff — defines the scope of appellate jurisdiction. Here, the use of clerk-issued "jurisdictional defect" letters to sidestep a final ruling operates as an unauthorized exception to § 1291, eroding the finality principle and disserving its objectives.

Appellant demands that the judges of this Court honor their constitutional oath, cease using administrative devices to delay and evade adjudication, apply the governing law without bias, and decide this appeal on its merits without further delay.

Respectfully submitted,
*/s/ Michael Miller*
MICHAEL MILLER
108 North Reading Road., Ste F, 246
Ephrata, Pennsylvania 17522
717-388-0163
reaganfive@protonmail.com
August 15, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served by e-filing a true and correct copy of the foregoing document to the following:

                Sarah Hyser-Staub PA I.D. No. 315989
                Lauren Anthony, PA I.D. No. 324557
                100 Pine Street
                P.O. Box 1166
                Harrisburg, PA 17108-1166
                717-232-8000
                sstaub@mcneeslaw.com
                lanthony@mcneeslaw.com

                *Attorneys for Defendants*

                Respectfully Submitted,

                */s/ Michael Miller*
                Michael Miller
                108 N. Reading Rd., Ste F, 246
                Ephrata, Pennsylvania 17522
                717-388-0163
Dated: August 15, 2025      reaganfive@protonmail.com