Exhibit 1: OOR Final Determination, AP 2025-3535 (issued/mailed Dec. 29, 2025).



## FINAL DETERMINATION

| | | |
|---|---|---|
| **IN THE MATTER OF** | : | |
| | : | |
| **MIKE MILLER,** | : | |
| **Requester** | : | |
| | : | |
| **v.** | : | **Docket No: AP 2025-3535** |
| | : | |
| **LANCASTER COUNTY,** | : | |
| **Respondent** | : | |

## FACTUAL BACKGROUND

On October 25, 2025, Mike Miller ("Requester") filed a request ("Request") with Lancaster County ("County") pursuant to the Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq.*, seeking:

> I. Scope
> … [A]ll records for January 1, 2023-present needed to verify County's compliance with:
> > [A] 16 Pa.C.S. §§ 1121-113 1 (County Officer and Employee Fiscal Security Act);
> > [B] 16 P.S. §§ 411, 1701-1704 (County Code-Fiscal Affairs/Custody); and
> > [C] 42 Pa.C.S. §§ 8541-8548, 8550 (Political Subdivision Tort Claims Act).
> …[1]
> 1. Official and Surety Bonds:
> > [A] All official/surety bonds, riders, renewals, or amendments for: (a) Solicitor, (b) County Commissioners, (c) Election Director, (d) Open Records Officer, (e) Controller.
> > [B] Surety company, bond number, amount, and effective dates for each.
> > [C] Any indemnity agreements, riders, or correspondence with any surety concerning those bonds.

---

[1] The Request included a section defining "records" as including, among other things, metadata. The Request also includes a Section entitled, "Format and Delivery," which, among other things, expressly requests metadata.

1

[D] Any notices, claims, or reports to any surety regarding litigation exposure, defense costs, or claims arising from *Miller v. County of Lancaster,* E.D. Pa. No. 5:24-cv-05338 and related cases.[2]

[E] Records showing filing/recording under 16 Pa.C.S. § 1131 (certified Recorder of Deeds copies) and custody logs maintained by the Controller under 16 P.S. § 1704.

2. Risk Manager and Governing-Body Determinations

[A] Board of Commissioners resolutions/minutes/votes setting bond amounts or approving bond forms (16 Pa.C.S. § 1130).

[B] Risk-manager/broker reports regarding bond or crime-fidelity coverage.

[C] Any filings/correspondence to the Department of State under § 1131(b).

3. Liability Insurance and Indemnification

[A] All liability/indemnification/public-official/crime-fidelity policies for 2023–2025, including Homesite Insurance Company of Florida Policy No. AMRPE00001-03 and any predecessor/renewal.

[B] Complete declarations, endorsements, and sections titled "Duties in the Event of Claim or Suit," "Notice of Claim," "Defense and Settlement of Claims."

[C] Any correspondence, tenders, claim reports, authorizations, or coverage submissions to/from Homesite, K2 Claims, Professional Governmental Underwriters, or any CCAP Insurance Trust referencing *Miller*.

[D] Any reservation-of-rights or coverage denials.

[E] Self-Insured Retention (SIR) tracking ledgers, loss runs, insurer audit communications, and internal reports reflecting defense-cost accruals for *Miller*.

4. Outside-Counsel Engagements and Payments

[A] All engagement letters/retainers/amendments between County (or any officer) and any private law firm representing County or its officers, including cases wherein [the Requester] is a party.

[B] All resolutions/minutes approving/ratifying such engagements/ expenditures.

[C] All invoices, vouchers, payment approvals, disbursements, controller entries, and general-ledger account/fund codes used for those payments.

[D] Any allocations/accounting entries distinguishing official-capacity vs individual-capacity defense time and any time-code guidance given to segregate such time.

[E] Communications among the County Solicitor, Controller, Commissioners, risk manager, or insurer regarding classification or disclosure of individual-capacity defense costs.

---

[2] The County's response omits reference to subitem 1[D].

2

5. Financial and Audit Disclosure
    [A] Annual financial reports, audit statements, and expense summaries for FY 2023-2025 listing expenditures under "Legal Services," "Claims and Damages," or comparable accounts, including native spreadsheets.
    [B] Controller certifications, audit findings, internal memoranda, or management letters addressing classification of litigation/defense expenses related to *Miller*.
    [C] Any entries/reports filed with DCED reflecting such expenditures.

6. Policies and Procedures on Disclosure and Indemnification
    [A] County policies/ordinances/regulations/procedures governing:
    (a) disclosure of litigation or defense expenses; (b) notice to insurers or sureties of claims; (c) authorization of defense for individual officers; (d) litigation-hold and records-preservation procedures for *Miller*.
    [B] Any training materials/ guidelines/memoranda provided to officers about duties to report suits or expenditures to the Controller, risk manager, surety, or insurer.
    [C] Any written policies implementing 42 Pa.C.S. §§ 8547-8548 and § 8550 (legal assistance, indemnity, and willful-misconduct limitations).

7. Records Required by 42 Pa.C.S. § 8547 (Legal Assistance to Employees):
    All records under § 8547(a)-(c) relating to *Miller* or related litigation, including:
    [A] Written requests by any officer/employee for defense under § 8547(a) or (b);
    [B] Approvals/denials/conditional grants by the County, Solicitor, Commissioners, or any insurer;
    [C] Resolutions/memoranda/correspondence documenting decisions to defend, reimburse, or refuse;
    [D] Court orders/judicial determinations referenced under § 8547(b);
    [E] Conflict disclosures/Rule 1.7 waivers/§ 8547(c) written consents where County-provided counsel represented both the County and individuals;
    [F] Reimbursement approvals/invoices/payments made under § 854 7(b);
    [G] Any administrative procedures used to process § 8547 requests, conflicts, reimbursements.

8. Indemnification/Willful-Misconduct Determinations (42 Pa.C.S. §§ 8548, 8550):
    [A] Any indemnification determinations under § 8548, including scope-of-duty findings.
    [B] Any § 8550 determinations (actual fraud, malice, willful misconduct) or analyses used to grant, deny, or limit indemnification or reimbursement.

9. Joint-Representation Authorizations and Conflict Waivers:
    [A] Any written authorizations, indemnification determinations, consents, or Rule 1.7 conflict waivers permitting McNees Wallace & Nurick LLC to jointly represent County and individual defendants in *Miller*, and any

3

App. 4

insurer approvals addressing joint representation, conflict management, or fee allocation.

[B] This demand specifically encompasses records referenced by and underlying "Defendants' Brief in Opposition to Motion to Compel Disclosure of Representation and Indemnification Arrangements," filed Aug. 14, 2025 in E.D. Pa. No. 5:24-cv-05338.

On November 28, 2025, after invoking a thirty-day extension to respond, 65 P.S. § 67.902(b), the County provided some responsive records,[3] some of which were redacted of personal identification information, 65 P.S. § 67.708(b)(6)(i)(A), or content the County argued is protected by the attorney-client privilege. The County denied the Request in part, arguing that several parts of the Request are insufficiently specific, 65 P.S. § 67.703, and that subitem 3[E] seeks exempt notes and working papers, 65 P.S. § 67.708(b)(12), or exempt correspondence with an insurer, 65 P.S. § 67.708(b)(27). Finally, the County argued that certain records do not exist in its possession, custody or control.

On December 1, 2025, the Requester filed an appeal with the Office of Open Records ("OOR"), challenging the denial and stating grounds for disclosure. The Requester argues that the County failed to retrieve records held by contractors as required by 65 P.S. § 67.506(d)(1), including records in the possession of McNees Wallace & Nurick, LLC ("McNees"), insurers, adjusters, risk managers, or other parties acting on the County's behalf. The Requester also argues that the County's redactions were overly broad, and the County relied too heavily on Section 708(b)(27) of the RTKL.[4] The OOR invited both parties to supplement the record and directed

---

[3] Specifically, the County granted subitems 1[A]-[C], 2[A], 3[A]-[B], 4[A]-[B], 4[D]. The County also granted 5[A]-[B] in part, arguing that no other records exist. In response to certain subitems, the County provided links to its website, where responsive records are available. Section 704 of the RTKL provides that "an agency may respond to a request by notifying the requester that the record is available through publicly accessible electronic means or that the agency will provide access to inspect the record electronically." 65 P.S. § 67.704(b)(1). However, "[i]f the requester is unwilling or unable to access the record electronically, the requester may, within 30 days following receipt of the agency notification, submit a written request to the agency to have the record converted to paper." 65 P.S. § 67.704(b)(2). Here, there is no indication that the Requester has asked for the records to be converted to paper.

[4] The Requester does not challenge the redaction of personal identification information, 65 P.S. § 67.708(b)(6)(i)(A), or the County's assertion of the exemption for notes and working papers. *See* 65 P.S. § 67.708(b)(12). As such, he

4

the County to notify the OOR if any third parties have a direct interest in the appeal.  65 P.S. § 67.1101(c).

On December 10, 2025, the County submitted a position statement, reiterating its grounds for denial.  In support, the County submitted statements made under the penalties of unsworn falsification to authorities by Sarah Hyser-Staub, Esq. ("Hyser-Staub Attestation"), an attorney with the law firm of McNees, Wallace and Nurick, LLC ("McNees"), and Open Records Officer ("AORO") Tammy Bender ("Bender Attestation").

On the same day, the Requester made a submission, arguing that the County had still not provided evidence of its search or provided adequate proof supporting the claimed exemptions. The Requester also argues that the Request is sufficiently specific, the existence of certain records is required by statute and some records are financial records.[5]  On December 11, 2025, the Requester made another submission, arguing that the County's submission attempts to limit the appeal to subitem 9[B] and divert attention away from the fact that it has not provided records required by statute in response to Items 6, 7, 8 and subitem 9[A].  Among other things, he argues that the Request is sufficiently specific, and the County failed to search for records and has not proven that responsive records are exempt from disclosure.

On December 22, 2025, in response to the OOR's request for supplemental evidence, the County submitted a supplemental attestation from Attorney Hyser-Staub ("Supplemental Hyser-Staub Attestation").

---

has waived any objections on these bases.  *See Pa. Dep't of Corr. v. Off. of Open Records*, 18 A.3d 429 (Pa. Commw. Ct. 2011).

[5] The Requester argues that the County has not obtained records from third parties that are accessible under Section 506(d)(1) of the RTKL.  *See* 65 P.S. § 67.506(d)(1); *Dental Benefit Providers, Inc. v. Eiseman*, 86 A.3d 932, 939 (Pa. Commw. Ct. 2014) (citation omitted), *aff'd* 124 A.3d 1214 (Pa. 2015).  However, it is not evident that other records exist in the possession of third parties, as the County has obtained records from McNees and, as analyzed below, has proven that responsive communications with its insurers are exempt.

5

## LEGAL ANALYSIS

The County is a local agency subject to the RTKL.  65 P.S. § 67.302.  Records in the possession of a local agency are presumed to be public, unless exempt under the RTKL or other law or protected by a privilege, judicial order or decree.  *See* 65 P.S. § 67.305.  As an agency subject to the RTKL, the County is required to demonstrate, "by a preponderance of the evidence," that records are exempt from public access.  65 P.S. § 67.708(a)(1).  Preponderance of the evidence has been defined as "such proof as leads the fact-finder … to find that the existence of a contested fact is more probable than its nonexistence."  *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Commw. Ct. 2011) (quoting *Pa. Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 827 (Pa. Commw. Ct. 2010)).  The Requester asks the County to provide a privilege log;[6] however, the parties have presented a sufficient factual record to enable the OOR to adjudicate the matter on the merits.

### 1. The OOR has no jurisdiction over judicial records

Subitem 7[D] seeks Court orders/judicial determinations.  The OOR does not have jurisdiction over judicial records in the possession of local agencies.  *See* 65 P.S. § 67.102; 65 P.S. § 67.503(b).  In *Court of Common Pleas of Lackawanna Cnty. v. Off. of Open Records*, the Commonwealth Court found that emails of a judicial employee in the possession of county were records of a judicial agency.  2 A.3d 810, 813 (Pa. Commw. Ct. 2010); *Grine v. Cnty. of Centre*, 138 A.3d 88, 99 (Pa. Commw. Ct. 2016) ("OOR lacks jurisdiction over appeals involving records of a judicial agency .... Indeed, allowing OOR to direct an agency to disclose a record showing activities of a judicial agency violates the separation of powers.").  Accordingly, the OOR cannot

---

[6] The Requester suggests that the County was required to provide a privilege log and attestation describing its search for records with its response to the Request; however, nothing in the RTKL requires agencies to provide these documents in response to a request.

6

order the disclosure of records responsive to subitem 7[D] or any other records that "show[] the activities of uniform judicial system personnel." *Grine*, 138 A.3d at 100.

### 2. Certain Items of the Request are insufficiently specific

The County argues that certain parts of the Request are not sufficiently specific to enable it to locate responsive records. Section 703 of the RTKL states that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested." 65 P.S. § 67.703. When determining whether a particular request is sufficiently specific, the OOR undertakes a nonexclusive, multi-factor test, considering "the extent to which the request specifies subject matter, the extent to which it defines the scope of the records it seeks, and the extent to which it limits the timeframe of the request." *Pa. Off. of the Governor v. Brelje*, 312 A.3d 928, 937 (Pa. Commw. Ct. 2024) (citing *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Commw. Ct. 2015)). The test is not "a conjunctive, bright-line rule requiring each 'element' of the test to be satisfied; rather, it [is] a flexible approach" consistent with relevant caselaw. *Id.*

First, "[t]he subject matter of the request must identify the 'transaction or activity' of the agency for which the record is sought." *Pittsburgh Post-Gazette*, 119 A.3d at 1125 (quoting 65 P.S. § 67.102). Second, "[t]he scope of the request must identify 'a discrete group of documents, either by type … or by recipient.'" *Id.* (quoting *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 372 (Pa. Commw. Ct. 2013). Finally, "[t]he timeframe of the request should identify a finite period of time for which records are sought." *Id.* at 1126 (citing *Carey*, *supra*). "The timeframe prong is, however, the most fluid of the three prongs, and whether or not the request's timeframe is narrow enough is generally dependent upon the specificity of the request's subject matter and scope." *Id.*

The above factors are intended "to facilitate an analysis in order to determine whether an

agency can ascertain which records are being requested …. The subject matter, scope, and timeframe of a request are flexible, analytical elements, not evidentiary requirements." *Pa. Dep't of Health v. Shepherd*, No. 377 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 207 *6-7 (Pa. Commw. Ct. 2022), *appeal denied*, No. 334 MAL 2022, 2022 Pa. LEXIS 1862 (Pa. 2022).

The Commonwealth Court has found that "a request that explicitly or implicitly obliges legal research is not a request for a specific document; rather it is a request for someone to conduct legal research with the hopes that the legal research will unearth a specific document that fits the description of the request." *Askew v. Pa. Off. of the Governor*, 65 A.3d 989, 993 (Pa. Commw. Ct. 2013). Furthermore, a request for an agency to identify the legal authority to take specific actions is a request for the agency to perform legal research. *See Pa. Dep't of Env't Prot. v. Legere*, 50 A.3d 260, 264 (Pa. Commw. Ct. 2012); *Gingrich v. Pa. Game Comm'n*, No. 1254 C.D. 2011, 2012 Pa. Commw. Unpub. LEXIS 38 at *14 (Pa. Commw. Ct. 2012) (holding that a request to verify certain information may involve research and was therefore inappropriate).

The plain language of certain parts of the Request seek to require the County to conduct legal research and provide any responsive records that meet specific statutory requirements. Specifically, the initial section of the Request, entitled "Scope," seeks all records needed to verify compliance with the three enumerated laws. Similarly, subitem 2[C], which seeks "filings/correspondence with the Department of State under § 1131(b)." Although subitem 2[A] identifies the law at issue, in order to comply with subitem 2[C], the County would be required to look at the statute, determine what is required and search for any responsive records.

The "Scope" section and subitem 2[C] do not request any individual record, and in order to respond to them, the County would be required to perform legal research regarding what these laws require and search for records that demonstrate compliance with those laws. As such, these

portions of the Request are insufficiently specific. *See Whitaker v. Pa. Dep't of State*, OOR Dkt. AP 2014-1463, 2014 PA O.O.R.D. LEXIS 1191 (holding that the Department is not required to perform legal research to locate laws and identify officials involved in the creation of Title 18); *Maddrey v. Pa. Dep't of State*, OOR Dkt. AP 2013-2204; 2013 PA O.O.R.D. LEXIS 1249 (holding that the Department is not required to perform legal research to locate "enacting clause" in Title 18).

Additionally, both the Bender Attestation and the Hyser-Staub Affidavit provide that neither Attorney Hyser-Staub nor the County could discern what records were sought by subitem 9[B], which seeks documents "referenced by and underlying Defendants' Brief in Opposition to [a] Motion …." Bender Attestation, ¶¶ 24-25; Hyser-Staub Affidavit, ¶¶ 8-9.[7] As neither the County nor an attorney from law firm that is handling the matter were able to discern what records are being requested, it is apparent that subitem 9[B] is insufficiently specific.

However, we must analyze the entirety of a request, as it is possible that portions of a request are insufficiently specific, while other portions provide sufficient guidance. *See Pa. State Police v. Off. of Open Records*, 995 A.2d 515, 517 (Pa. Commw. Ct. 2010) ("the valid part of the request was included in a laundry list of requested materials").

The County argues that subitem 5[C], which seeks "[a]ny entries/reports filed with DCED reflecting [expenditures noted in annual financial reports, audit statements, and expense summaries for FY 2023-2025]," is insufficiently specific.[8] The subitem's subject matter is County finances;

---

[7] Under the RTKL, an affidavit or statement made under penalty of perjury may serve as sufficient evidentiary support. *See Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515, 520-21 (Pa. Commw. Ct. 2011); *Moore v. Off. of Open Records*, 992 A.2d 907, 909 (Pa. Commw. Ct. 2010). In the absence of any evidence that the County has acted in bad faith, "the averments in the [attestation] should be accepted as true." *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 382-83 (Pa. Commw. Ct. 2014) (citing *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Commw. Ct. 2013)).
[8] While the County's response states that it is not clear what agency is referenced by "DCED," as a Google search returns a number of organizations with that acronym, this argument is not well-taken.

9

it defines a scope, in that it seeks entries or reports filed with DCED,[9] and, as the "Scope" section provides, the Request seeks records from January of 2023 to the date of the Request. Therefore, subitem 5[C] seeks a clearly defined universe of responsive records and does not require the County to conduct legal research. *See Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1145 (Pa. Pa. Commw. Ct. 2017) (holding that a request is sufficiently specific where it enumerates a "clearly defined universe of documents."); *Pa. Dep't of Env't Prot. v. Legere*, 50 A.3d 260, 265 (Pa. Commw. Ct. 2012) (finding that a request that sought a clearly defined universe of responsive records and did not require judgments to be made as to the relation of the documents to the request was sufficiently specific).

Additionally, mere reference to a law does not necessarily mean that a given Item requires legal research. Subitem 1[E] references a filing required by a certain law; however, unlike the "Scope" section and subitem 2[C], subitem 1[E] specifies what the filing is, obviating the need for legal research. Further, the immediately preceding subitem notes that it pertains to the *Miller* case; thus, it is evident that subitem 1[E] pertains to this matter. *See Greim v. Pa. State Police*, 329 A.3d 873 (Pa. Commw. Ct. 2025) (finding that it was error for the OOR to consider one item of a request as having nothing to do with the remainder of the request); *see also Montgomery Cnty. v. Iverson*, 50 A.3d 281, 284 (Pa. Commw. Ct. 2012) ("the specificity of a request must be construed in the request's context, rather than envisioning everything the request might conceivably encompass."). Additionally, subitem 6[C] seeks policies implementing a law, but the subitem describes the subject matter of the policies requested. Similarly, Items 7 and 8 reference laws, but each subitem under those Items seeks a particular type of record; therefore, these Items do not require legal

---

[9] With the exception of 7[D], as noted above.

research.  Likewise, while subitem 9[A] mentions a Rule of Professional Conduct, it indicates particular types of records.

In sum, while responding to the "Scope" section and subitem 2[C] requires legal research,[10] and subitem 9[B] is insufficiently specific, subitems 1[E], 6[C] and 9[A], and the entirety of Items 7-8 seek particular types of records.  As this latter set of records includes a finite time frame, they are sufficiently specific to enable the County to search for responsive records.  *See Greim* at 882 ("A request need only provide enough information to inform 'an agency of the records requested.'") (quoting *Iverson*, 50 A.3d at 284, n.4).  As the County raises no grounds for withholding records responsive to subitems 1[E], 5[C] or 9[A] or to Items 7 or 8, all responsive records must be produced.[11]  *See* 65 P.S. § 67.305.

### 3.  The County appropriately redacted most privileged material from invoices from McNees

The County has redacted what it argues are privileged entries from legal invoices from McNees. The RTKL's definition of privilege includes the attorney-client privilege, and the presumption that records in the possession of local agencies are public records does not apply to records that are privileged.  *See* 65 P.S. §§ 67.102 and 305(a)(2).

In order for the attorney-client privilege to apply, an agency must demonstrate that: 1) the asserted holder of the privilege is or sought to become a client; 2) the person to whom the communication was made is a member of the bar of a court, or his subordinate; 3) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or

---

[10] However, nothing in this Final Determination prevents the Requester from filing a new request, clarifying what he is seeking, and if necessary, filing an appeal pursuant to the requirements of 65 P.S. § 67.1101(a)(1).

[11] The County does argue that records responsive to Items 6 and 8 do not exist.  Those arguments are addressed below.

assistance in a legal matter, and not for the purpose of committing a crime or tort; and 4) the privilege has been claimed and is not waived by the client. *See Bousamra v. Excela Health*, 210 A.3d 967, 983 (Pa. 2019) (internal citation omitted). An agency may not rely on a bald assertion that the attorney-client privilege applies; instead, the agency must establish the first three prongs of the privilege for it to apply. *See, e.g., Mezzacappa v. Northampton Cnty.*, OOR Dkt. AP 2022-2617, 2023 PA O.O.R.D. 240.

In *Levy v. Senate of Pennsylvania*, the Pennsylvania Supreme Court addressed the application of the attorney-client privilege to descriptions of legal services on legal invoices. 65 A.3d 361, 373 (Pa. 2013) ("[T]he determination of the applicability of the attorney-client privilege does not turn on the category of a document, such as whether it is an invoice or fee agreement. Instead, the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege."). In determining whether the privilege applied to a particular entry in an invoice, the Court approved a "line-by-line analysis." *Id*. The Court also discussed what content is considered privileged:

> [T]he relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege but, instead, is subject to disclosure under the specific provisions of the RTKL.

*Id*. at 373-74 (citations omitted); *see also Slusaw v. Hoffman*, 861 A.2d 269, 272-73 (Pa. Super. Ct. 2004) (holding that production of evidence from attorneys regarding meetings and telephone calls would not violate attorney-client privilege where it would not call for disclosure of confidential communications).]

Here, the Hyser-Staub Affidavit provides:

12

1. I am an attorney in good standing in the Commonwealth of Pennsylvania.

2. I, [along with McNees], have been retained as counsel to represent [the County] and are the holders of privileged information.

…

5. Those invoices contained communications made for the purpose of providing legal services to the County related to ongoing matters and were not made in the presence of strangers.

6. Accordingly, portions of those invoices were redacted to protect the attorney-client privilege.

7. The County has not waived this privilege.

The Hyser-Staub Affidavit affirms that the redacted or withheld material was exchanged between McNees and its client for the purpose of obtaining legal services, and the County is claiming and has not waived the privilege.  Further, the Supplemental Hyser-Staub Attestation affirms that the redactions were made in good faith to preserve the attorney-client privilege, in accordance with the standards set forth in *Levy* and *Slusaw*.

Review of the redacted invoices reveals that the County has, for the most part, made limited redactions.  *Compare Janesch v. Pa. House of Representatives*, 299 A.3d 1030, 1041 (Pa. Commw. Ct. 2023) (rejecting the argument that redactions to engagement letters and invoices was unreasonable in part due to the limited nature of the redactions), *with Couloumbis v. Senate of Pa.*, 300 A.3d 1093, 1104-05 (Pa. Commw. Ct. 2023) (finding that the Senate had not met its burden of proof where review of the redacted records indicated that the Senate had made broad, categorical redactions).

However, invoice nos. 542003 and 5363681 contain block redactions.  The OOR asked the County to address redactions to these invoices, but the Supplemental Hyser-Staub Attestation does not address them.

Accordingly, while the County has met its burden of proving that it properly redacted most of the invoices of privileged material, it has not met its burden with regard to invoice nos. 542003 and 5363681.

### 4. Certain records are exempt communications with an insurance carrier or risk management office

The County withheld certain records, arguing that they are exempt communications with an insurance carrier or risk management office.  Section 708(b)(27) of the RTKL exempts "[a] record or information relating to a communication between an agency and its insurance carrier, administrative service organization or risk management office."  65 P.S. § 67.708(b)(27).  The OOR has interpreted this exemption broadly, noting that it applies even to internal records discussing communication with an insurance carrier. *See Mezzacappa v. Northampton Cnty.*, OOR Dkt. AP 2022-1685, 2022 PA O.O.R.D. LEXIS 2154.

The County denied access to records responsive to the following subitems on this basis: 2[B], which sought "Risk-manager/broker reports regarding bond or crime-fidelity coverage"; 1[D], which sought "[a]ny notices, claims, or reports to any surety regarding litigation exposure, defense costs, or claims arising from [the *Miller* case]"; and 3[C]-[D], which sought "[a]ny correspondence, tenders, claim reports, authorizations, or coverage submissions to/from [various insurers] referencing *Miller*" and "[a]ny reservation-of-rights or coverage denials," respectively.[12]

The Requester argues that the County overapplies the exemption and alleges that the County has withheld financial records, but the records described in the Request are facially the types of records to which the exemption applies, and there is no evidence that the County has withheld financial records.

---

[12] The County also denied 4[E] on this basis; however, as set forth below, the County has proven that no records responsive to this subitem exist.

App. 15

The RTKL distinguishes between financial records related to insurance and communications with insurers, providing that the exemption "shall not apply to a contract with an insurance carrier, administrative service organization or risk management office or to financial records relating to the provision of insurance." 65 P.S. § 67.708(b)(27). The fact that communications between an insurer and the agency relate to the agency's finances in some way is not sufficient to transform all those communications into "financial records." *See Stephens v. Central Bucks Sch. Dist.*, OOR Dkt. AP 2023-0914, 2023 PA O.O.R.D. LEXIS 1443 (finding that communications between the District and its insurance carrier are not financial records and are exempt from public access); *Gardner v. Upper Dublin Twp.*, OOR Dkt. AP 2023-1277, 2023 PA O.O.R.D. LEXIS 1656 (finding that "claims associated with ... damages" and the "carrier responses to those claims" are "all records that would, on their face, fall within the parameters of Section 708(b)(27) of the RTKL").

The Bender Attestation provides that documents that were not provided to the Requester include the preservation of rights letters sent by the insurance provider and emails to and from the insurance provider and outside counsel regarding the status of the litigation with the Requester. Bender Attestation, ¶ 10. Accordingly, the County has met its burden of proving that these records are exempt from disclosure.

5. **The County has not proven that no other responsive records exist in its possession, custody or control**

The Requester challenges the County's search. In response to a request for records, an agency is required to "make a good faith effort to determine if … the agency has possession, custody or control of the record." 65 P.S. § 67.901. While the RTKL does not define the term "good faith effort" as used in Section 901 of the RTKL, in *Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, the Commonwealth Court stated:

> As part of a good faith search, the open records officer has a duty to advise all custodians of potentially responsive records about the request, and to obtain all potentially responsive records from those in possession. … When records are not in an agency's physical possession, an open records officer has a duty to contact agents within its control, including third-party contractors. … After obtaining potentially responsive records, an agency has the duty to review the records and assess their public nature under … the RTKL.

185 A.3d 1161, 1171-72 (Pa. Commw. Ct. 2018) (citations omitted), *aff'd*, 243 A.3d 19 (Pa. 2020).

An agency must show, through detailed evidence submitted in good faith from individuals with knowledge of the agency's records, that it has conducted a search reasonably calculated to uncover all relevant documents. *See Mollick v. Twp. of Worcester*, 32 A.3d 859, 875 (Pa. Commw. Ct. 2011).

"The burden of proving a record does not exist ... is placed on the agency responding to the right-to-know request." *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Commw. Ct. 2011). An attestation by the individual who searched for responsive records is sufficient to meet an agency's burden of proving the nonexistence of a record. *Id.*; *see also Pa. Dep't of Health v. Mahon*, 283 A.3d 929, 936 (Pa. Commw. Ct. 2022) (holding that, when there is evidence that a record does not exist, "[i]t is questionable to what degree additional detail and explanation are necessary…."); *Campbell v. Pa. Interscholastic Athletic Ass'n*, 268 A.3d 502 (Pa. Commw. Ct. 2021), *appeal granted in part*, 280 A.3d 870, *aff'd*, No. 71 MAP 2022, No. 72 MAP 2022, 2024 Pa. LEXIS 1087 (Feb. 21, 2024) (noting that an agency need only prove the nonexistence of records by a preponderance of the evidence, the lowest evidentiary standard, which is tantamount to a "more likely than not" inquiry).

The Bender Attestation provides that she is the Office Manager for the County Solicitor's Office, and in that capacity, she has regular communication with the County's outside counsel and insurance providers on ongoing litigation matters. Bender Attestation, ¶ 2. AORO Bender affirms

that there was no correspondence between the County Controller's Office and the insurance provider and the only communication between the Solicitor's Office and the Controller's office about the *Miller* matter were check requests to pay outside counsel. *Id.*, ¶¶ 11-12. Accordingly, the County has met its burden of proving that no records responsive to subitem 4[E] exist. *See Hodges*, 29 A.3d at 1192.

The Bender Attestation further provides that the County attempted to address as much of the Request that did not require legal research. *Id.*, ¶ 22. However, as the Attestation does not describe the County's search, the OOR cannot conclude that the County has conducted a good faith search.

Additionally, the County partially denied subitem 5[A], explaining in its unsworn response that year-end budget reports are not organized by spend per case but only fees paid for legal services. However, the County has provided no evidence substantiating its denial. *See Off. of the Governor v. Davis*, 122 A.3d 1185, 1193-94 (Pa. Commw. 2015) (en banc) (holding that an "unsworn position statement does not constitute evidence. Position statements are akin to briefs or proposed findings of fact, which, while part of the record, are distinguishable from the *evidentiary* record.") (emphasis in original) (citation omitted); *Housing Auth. of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209, 216 (Pa. Commw. Ct. 2012) (holding that unsworn statements of counsel are not competent evidence). Similarly, the County denied subitem 5[B] in part and denied Item 8 in its entirety but has provided no evidence confirming the nonexistence of additional responsive records. Finally, the Request expressly sought metadata, and the County's submissions do not address this. Accordingly, the OOR cannot conclude that the County has met its burden of proving that no records responsive to these portions of the Request exist.[13]

---

[13] The OOR is mindful that an agency "shall not be required to create a record which does not currently exist…." 65 P.S. § 67.705. However, agencies have the burden of proving that a record does not exist, *Hodges v. Pa. Dep't of*

**CONCLUSION**

For the foregoing reasons, the Requester's appeal is **granted in part, denied in part** and **dismissed for lack of jurisdiction in part**, and within thirty days, the County is required to conduct a good faith search for records responsive to subitems 1[E], and 9[A], and the entirety of Items 5-8, and provide all records discovered thereby, along with metadata for all responsive records, including the records that have already been provided. If no records are discovered as a result of this search, the County shall produce an attestation made under the penalty of perjury or a sworn affidavit so stating. The County shall also produce invoice nos. 542003 and 5363681 with limited redactions, as discussed above. This Final Determination is binding on all parties. Within thirty days of the mailing date of this Final Determination, any party may appeal to the Lancaster County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond as per Section 1303 of the RTKL, 65 P.S. § 67.1303, but as the quasi-judicial tribunal that adjudicated this matter, the OOR is not a proper party to any appeal and should not be named as a party.[14] All documents or communications following the issuance of this Final Determination shall be sent to oor-postfd@pa.gov. This Final Determination shall be placed on the website at: http://openrecords.pa.gov.

---

*Health*, 29 A.3d 1190, 1192 (Pa. Commw. Ct. 2011). Because the County has not presented evidence as to whether the requested records exist or if a good faith search was conducted, the County has not met its burden of proof. The County is therefore directed to conduct a good faith search for records responsive to the Request as set forth in 65 P.S. § 67.901, and provide any records discovered as a result of that search. If no records are located as a result of this search, the County shall inform the Requester of such in writing.

[14] *Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

18

**FINAL DETERMINATION ISSUED AND MAILED:  December 29, 2025**

*/s/ Blake Eilers*
Blake Eilers, Esq.
Senior Appeals Officer

Delivered via e-file portal to: Mike Miller; Tammy Bender

19

Exhibit 2: County letter dated Jan. 28, 2026 (no Item 9(A) records found).



**County of Lancaster**                                        **Open Records Office**

**County Commissioners**                                      **Open Records Officer**
Joshua G. Parsons, Chairman                                Tammy L. Bender
Ray D'Agostino, Vice-Chairman
Alice Yoder, Commissioner

January 28, 2026

VIA EMAIL TO:
Reganfive@protonmail.com
Mike Miller

Re:    County of Lancaster Right to Know Request 876-2025 and
       Pennsylvania Office of Open Records Appeal No.  2025-3535

Dear Mr. Miller:

This letter will address those items noted in the Pennsylvania Office of Open Records Final determination dated January 29, 2025, related to the above matter.

1.    ITEM 1 (E) Official and Surety Bonds Item – Records showing filings, certified Recorder of Deeds Copies and custody log maintained by the Controller.  Official and Security Bonds found within the time period of your request filed in the Recorder of Deeds Office is attached hereto.  Official records filed within the Recorder of Deeds Office can be found on the Recorder of Deeds.   The only bond found was that of the County Treasurer's Office.  Further, no logs were found maintained by the Controller's office related to Official and Surety Bonds.

2.    ITEM 5 Financial and Audit Disclosures:

A.    Item 5(A) – Annual financial reports, audit statements, expense summaries for FY 2023 – 2025 listing expenditures under "Legal Services", "Claims and Damages" or comparable accounts, including native spreadsheets.   Attached please find a ledger related to this portion of your request which lists the account numbers 7314 and 7317 which represent the County's internal codes for expenses related to legal matters throughout the County.   Audits for 2023 and 2024 are also attached.  The Audit for year 2025 has yet to be completed.  As noted previously, the County's audits are available online at Annual Comprehensive Financial Report & Annual Report Summary | Lancaster County, PA - Official Website , No other audits related to Legal Services, Claims and Damages exist after a thorough search of the County's records.

B.    Item 5(B) – Controller Certifications, audit findings, internal memoranda, or management letters addressing classification of legal expenses related to Miller.   After a thorough search of the County's records no records were found related to Controller Certifications, audit findings and internal memoranda, or management letters addressing classification of legal expenses related to Miller.

Mike Miller
January 28, 2026
Page 2

    C.  Item 5(C) – Filings with the DCED for the years 2023-2025 are attached
hereto.

   3.  ITEM 6  Policies and Procedures on Disclosure and Indemnification:

    A.  ITEM 6(A) – County policies/ordinances/regulations governing:

      (a) disclosure of litigation defense expenses

      (b) notice to insurers or sureties of claims

      (c) authorization of defense for individual officers

      (d) litigation hold and records preservation procedures for Miller.

   Item (6)(A)(a) through 6(d) no records were found related to County policies,
County ordinances or County regulations enacted by the County related to sub items a-d.
Guidelines as to giving notice to insurance carriers are found within the County's
indemnification policies attached hereto.

   Item 6 (B) Any training materials, guidelines, memoranda, provided to officers
about duties to report suits or expenditures to the controller, risk manager, surety or insurer.   No
records were found related to memoranda provided to officers about duties to report suits or
expenditures to the controller, risk manager, surety.  The County does have a training related to
filing an expense report with the County Controller through Workday which is attached.  In
addition, reporting claims to the County's insurer is covered under the policies attached hereto.

   Item 6 (C) Any written policies implementing legal assistance, indemnity and
willful-misconduct limitations.  No County created policies related to this portion of the request
were found except for those noted in the County's insurance policies attached hereto.

   4.  ITEM 7 – Records Required for Legal Assistance for Employees related to
Miller or related litigation, including:

    A.  Item 7 (A) Written requests by any officer/employee for defense.
Access is denied in accordance with Pennsylvania Right to Know Law Section 708(b)(27) as a
record or information relating to communication between an agency and its insurance carrier,
administrative service organization or risk management office.

    B.  Item 7(B) approvals/denials/conditional grants by the County,
Solicitor, Commissioner or any insurer.   Access as it relates to grants by any insurer is denied in
accordance with Pennsylvania Right to Know Law Section 708(b)(27) as a record or information
relating to communication between an agency and its insurance carrier, administrative service
organization or risk management office.  In addition, no records were found related to
approvals/denials/conditional grants by the County, Solicitor and/or Commissioner.

Mike Miller
January 28, 2026
Page 3

       C.     Item 7(C) Resolutions/memoranda/correspondence documenting decision to defend, reimburse, or refuse.  No records were found related to this portion of the request.

       D.     Item (E) Conflict disclosures/Rule 1.7 waivers, written consents where the County provided counsel represented both the County and individuals.  No records were found related to this portion of the request.

       E.     Item 7(F) Reimbursement approvals/invoices/payments - No records were found related to this portion of the request as it relates to any reimbursement approvals, reimbursement invoices or reimbursement payments

       F.     Item 7(G) Any administrative procedures to process conflicts reimbursement. No records were found related to this portion of the request.

    5.     ITEM  8. Indemnification/willful-misconduct determinations –

       A.     Item 8(A) No records were found related to this portion of the request.

       B.     Item 8(B) any determinations (actual, fraud, malice, willful misconduct) or analysis used to grant deny or limit indemnification or reimbursement.  Attached please find press releases related to investigations into voter fraud in addition the District Attorney's Office posts its press release related to this matter as well on their website located at: Lancaster County District Attorney's Office Continues to Investigate Voter Registration Fraud | Lancaster County District Attorney's Office.

    6.     ITEM 9.     Joint-Representation Authorizations and Conflict Waivers:

       A.     Item 9 (A) Any written authorizations, indemnification determinations, consents, or Rule 1.7 conflict waivers permitting McNees Wallace & Nu rick LLC to jointly represent County and individual defendants in Miller, and any insurer approvals addressing joint representation, conflict management, or fee allocation.  After a thorough search of the County's records as well as consultant with the County's counsel handling the Miller matters, no records were found within the scope of this portion of your request.

    7.     Metadata has been provided for the documents produced.

    8.     Invoices 5420003 and Invoice 5420003 have been attached hereto with redaction under the Pennsylvania Right to Know Law Section 305(A) (2) as portion of the record is protected by a privilege.  In this instance the attorney client privilege.

    9.     Supporting affidavits have been attached.

App. 24

Mike Miller
January 28, 2026
Page 4

Sincerely,

Tammy L. Bender
Open Records Officer
County of Lancaster

Attachments

Exhibit 3: County attestation dated Jan. 29, 2026 (penalty of perjury; no Item 9(A) records).

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF OPEN RECORDS

| | | |
|---|---|---|
| Mike Miller | : | |
| | : | Docket No. AP 2025-3535 |
| v. | : | |
| | : | |
| County of Lancaster, Pennsylvania | : | |

## <u>AFFIDAVIT OF TAMMY BENDER</u>

I, Tammy Bender, hereby declare, pursuant to 18 Pa.C.S. § 4904, that the following statements are true and correct based upon my personal knowledge information and belief:

1.      I am the Open Records Officer for the County of Lancaster and am responsible for responding to Right to Know requests filed with the County. In my capacity as the Open Records Officer, I am familiar with the records of the County and the manner in which they are maintained.

2.      I am also the Office Manager for the Lancaster County Solicitor's Office.  In my capacity as the Solicitor's Office Manager, I have regular communication with the County's outside counsel and insurance providers on ongoing litigation matters.

3.      On or about October 22, 2025, I received a request under the Pennsylvania Right to Know Law from Mike Miller for the following:

"please produce all records for January 1, 2023- present needed to verify County's compliance with:

1.      16 Pa.C.S. §§ 1121-1131 (County Officer and Employee Fiscal Security Act);
2.      16 P.S. §§ 411, 1701-1704 (County Code - Fiscal Affairs/Custody); and
3.      42 Pa.C.S. §§ 8541-8548, 8550 (Political Subdivision Tort Claims Act)."

1.      Official and Surety Bonds:

A.      All official/surety bonds, riders, renewals, or amendments for: (a) Solicitor, (b) County Commissioners, (c) Election Director, (d) Open Records Officer, (e) Controller;
B.      Surety company, bond number, amount, and effective dates for each.

C.    Any indemnity agreements, riders or correspondence with surety regarding litigation exposure, defense costs, or claims arising from Miller v. County of Lancaster, E.D. 5:24-cv-05338 and related cases.

D.    Records showing filing recording under 16 Pa.C.S. §1131 (certified Recorder of Deeds copies) and custody logs maintained by the Controller.

2.    Risk Manager and Governing-Body Determinations

A.    Board of Commissioners resolutions/minutes/votes setting bond amounts or approving bond forms (16 Pa.C.S. § 1130).

B.    Risk-manager/broker reports regarding bond or crime-fidelity coverage.

C.    Any filings/correspondence to the Department of State under§ 1131 (b).

3.    Liability Insurance and Indemnification:

A.    All liability/indemnification/public-official/crime-fidelity policies for 2023-2025, including Homesite Insurance Company of Florida Policy No. AMRPE00001-03 and any predecessor/renewal.

B.    Complete declarations, endorsements, and sections titled "Duties in the Event of Claim or Suit," "Notice of Claim," "Defense and Settlement of Claims."

C.    Any correspondence, tenders, claim reports, authorizations, or coverage submissions to/from Homesite, K2 Claims, Professional Governmental Underwriters, or any CCAP Insurance Trust referencing Miller.

D.    Any reservation-of-rights or coverage denials.

E.    Self-Insured Retention (SIR) tracking ledgers, loss runs, insurer audit communications, and internal reports reflecting defense-cost accruals for Miller.

4.    Outside Counsel Engagements and Payments:

A.    All engagement letters/retainers/amendments between County (or any officer) and any private law firm representing County or its officers, including cases wherein Michael Miller is a party.

B.    All resolutions/minutes approving/ratifying such engagements/expenditures.

C.    All invoices, vouchers, payment approvals, disbursements, controller entries, and general-ledger account/fund codes used for those payments.

D.    Any allocations/accounting entries distinguishing official-capacity vs individual-capacity defense time and any time-code guidance given to segregate such time.

E.    Communications among the County Solicitor, Controller, Commissioners, risk manager, or insurer regarding classification or disclosure of individual-capacity defense costs.

5.    Financial and Audit Disclosure

A.    Annual financial reports, audit statements, and expense summaries for FY 2023-2025 listing expenditures under "Legal Services," "Claims and Damages," or comparable accounts, including native spreadsheets.

Bender 2

        B.     Controller certifications, audit findings, internal memoranda, or management letters addressing classification of litigation/defense expenses related to Miller.

        C.     Any entries/reports filed with DCED reflecting such expenditures.

6.     Policies and Procedures on Disclosure and Indemnification

        A.     County policies/ordinances/regulations/procedures governing:

             i.     disclosure of litigation or defense expenses; (b) notice to insurers or sureties of claims; (c) authorization of defense for individual officers; (d) litigation-hold and records-preservation procedures for Miller.

             ii.     notice of insurers or sureties of claims.

             iii.     authorization of defense for individual officers.

             iv.     litigation hold and records preservations procedures for Miller.

        B.     Any training materials/guidelines/memoranda provided to officers about duties to report suits or expenditures to the Controller, risk manager, surety, or insurer.

        C.     Any written policies implementing 42 Pa.C.S. §§ 8547-8548 and§ 8550 (legal assistance, indemnity, and willful-misconduct limitations).

7.     Records Required by 42 Pa.C.S. § 8547 (Legal Assistance to Employees): All records under §8547(a)-(c) relating to Miller or related litigation, including:

        A.     Written requests by any officer/employee for defense under§ 8547(a) or (b);

        B.     Approvals/denials/conditional grants by the County, Solicitor, Commissioners, or any insurer;

        C.     Resolutions/memoranda/correspondence documenting decisions to defend, reimburse, or refuse;

        D.     Court orders/judicial determinations referenced under§ 8547(b);

        E.     Conflict disclosures/Rule 1.7 waivers/§ 8547(c) written consents where County-provided counsel represented both the County and individuals;

        F.     Reimbursement approvals/invoices/payments made under§ 8547(b);

        G.     Any administrative procedures used to process§ 8547 requests, conflicts, reimbursements.

8.     Indemnification/Willful-Misconduct Determinations (42 Pa.C.S. §§ 8548, 8550):

        A.     Any indemnification determinations under§ 8548, including scope-of-duty findings.

        B.     Any§ 8550 determinations (actual fraud, malice, willful misconduct) or analyses used to grant, deny, or limit indemnification or reimbursement.

9.     Joint-Representation Authorizations and Conflict Waivers:

        A     Any written authorizations, indemnification determinations, consents, or Rule 1.7 conflict waivers permitting McNees Wallace & Nurick LLC to jointly represent County and individual defendants in Miller, and any insurer approvals addressing joint representation, conflict management, or fee allocation.

        B.     This demand specifically encompasses records referenced by and underlying "Defendants' Brief in Opposition to Motion to Compel Disclosure of Representation and Indemnification Arrangements," filed Aug. 14, 2025 in E.D. Pa. No. 5:24-cv-05338."

Bender 3

4.    In response to Mr. Miller's request regarding Paragraph 9(a), I conducted a diligent and thorough search of the County's records and found no responsive records to Mr. Miller's request.

Dated: _1-29-26_____

_____
Tammy Bender
Open Records Officer
Lancaster County, Pennsylvania

Bender 4